IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSER TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11cv302 ERIE |
| | ) | **ELECTRONICALLY FILED** |
| CARL SCHREIBER GmbH d/b/a | ) | |
| CSN METALS, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL J. ROSER, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## Memorandum Opinion

### I. Introduction

This is a breach of contract action involving a contract for the manufacture and sale of

copper molding plates. Plaintiff Roser Technologies, Inc. ("RTI") alleges that Defendant Carl

Schreiber GmbH d/b/a CSN Metals ("CSN") breached its supply contract when CSN insisted

that RTI expedite payment or secure a letter of credit. Doc. No. 1-1. CSN filed a Second

Amended Counterclaim alleging that RTI breached the contract by repudiation.[1] Doc. No. 37.

RTI filed a Motion for Judgment on the Pleadings with respect to CSN's breach of

contract counterclaim. Doc. No. 40. CSN filed a Cross-Motion for Judgment on the Pleadings

with respect to its breach of contract claim and with respect to the original RTI Complaint, which

asserted a claim for breach of contract. Doc. No. 44. After careful consideration of the Cross-

---

[1] CSN also alleges defamation and intentional interference with prospective contractual relations
in its Second Amended Counterclaim and Third-Party Complaint against RTI and Third-Party
Defendant Daniel J. Roser. Doc. No. 37. Because the pending Motions do not address these
claims, the Court will not discuss them further except as necessary for resolution of the pending
Motions.

Motions for Judgment on the Pleadings (doc. nos. 40 & 44), Briefs in support thereof (doc. nos. 41 & 45), Briefs in opposition (doc. nos. 42 & 46), and Replies (doc. nos. 43 & 47), RTI's Motion for Judgment on the Pleadings (doc. no. 40) will be DENIED, and CSN's Cross-Motion for Judgment on the Pleadings (doc. no. 44) will be GRANTED.

## II. Factual Background

This case revolves around two exchanges of documents for the manufacture and sale of copper mold plates. The first document exchange began on May 11, 2011, when CSN provided quotation 714257 to RTI. Doc. No. 3-1, 2-3. On August 9, 2011, RTI sent purchase order 6676, which was "per CSN quote 714257," to CSN. Id., 12-15. On October 8, 2011, CSN sent order confirmation 17507 to RTI. Id., 17-18. The order confirmation listed RTI's order number as 6676. Id.

The second document exchange began on August 11, 2011, when CSN provided quotation 714576 to RTI. Id., 20-21. On August 23, 2011, RTI sent purchase order 6761, which was "per CSN quote 414576," to CSN. Id., 23-30. On August 25, 2011, CSN sent order confirmation 17579 to RTI, which listed the order number as "6761." Id., 32-33.

The first page of CSN quotations 714257 and 714576 included the following language, "According to our standard conditions of sale to be found under www.csnmetals.de, we have pleasure in quoting without engagement as follows[.]" Doc. No. 3-1, 2, 20. The second page of both quotations included the following language, "If we have offered a payment target, a sufficient coverage by our credit insurance company is assumed. In case this cannot obtained we have to ask for equivalent guarantees or payment in advance." Id., 3, 21.

The first page of CSN order confirmations 17507 and 17579 stated, "We thank you for your purchase order. This order confirmation is subject to our standard conditions of sale as

known (www.csnmetals.de)."  Doc. No. 3-1, 17, 32.  CSN's standard conditions of sale[2] provide,

among other things, that "supplies and benefits shall exclusively be governed by German law.

The application of laws on international sales of moveable objects and on international purchase

contracts on moveable objects is excluded."  Id., 10.

On October 4, 2011, CSN emailed RTI.  Doc. No. 1-1, 29-30.  CSN informed RTI that

"Cofoaca USA cut the credit line complete."  Id.  CSN informed RTI that "the best options are to

change into 'payment in advance' or L/C (letter of credit)."  Id., 29.  On October 17, 2011, CSN

emailed RTI offering a third option: "[I]n order to minimize our risk we can also offer you to

change the delivery to partial shipments.  The second shipment would leave as soon as the

payment for the first shipment has been transferred to us etc."  Id.  RTI sent CSN a letter dated

October 24, 2011, advising that because of CSN's refusal to perform, RTI would procure the

requested copper from an alternate supplier.  Doc. No. 1-1, 34.

### III. Standard of Review

A party may move for judgment on the pleadings "after the pleadings are closed-but early

enough not to delay trial."  Fed. R. Civ. P. 12(c)  A Rule 12(c) motion for judgment on the

pleadings may be granted, "only if, viewing all the facts in the light most favorable to the

nonmoving party, no material issue of fact remains and the moving party is entitled to judgment

as a matter of law."  *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).  When considering a Rule 12(c)

motion, the Court may review the pleadings and "documents that are attached to or submitted

with the [pleadings,] any matters incorporated by reference or integral to the claim, items subject

---

[2] Although the parties and the CSN documents refer to "standard conditions of sale," the
provided document is entitled "General Conditions of Sale of Carl Schreiber GmbH,
Neunkirchen."  The Court will refer to these conditions as the "standard conditions."

to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## IV. Discussion

### A. Choice-of-Law

#### 1. Applicable Standard

For the reasons discussed *infra*, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. The Court must apply the choice-of-law rules of the forum state, Pennsylvania. *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 488 (1941)). "Pennsylvania applies the flexible, interests/contacts methodology to contract choice-of-law questions." *Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) (internal quotation marks and ellipsis omitted) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226-27 (3d Cir. 2007)).

"The first step in the analysis is to identify the . . . laws [that] might apply." *Id*. The parties agree that the choice is between the Uniform Commercial Code ("UCC"), and the United Nations Convention for the International Sale of Goods ("CISG"). Next, the Court must "determine whether or not an actual conflict exists. . . . That is done by examining the substance of the potentially applicable laws to determine whether there is distinction between them." *Maniscalco v. Bro. Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (internal quotation marks and citations omitted).

The main issue before the Court is which, if any, of CSN's standard conditions are included as part of the contracts that are the subject of this litigation. RTI argues that there is no choice-of-law issue because the UCC and CISG do not differ with respect to the issue before the

Court.  Doc. No. 41, 12 n.1.  CSN argues that there is a difference and that the CISG applies.

Doc. No. 45, 13-15.  Thus, the Court will discuss the approaches of the UCC and the CISG with

respect to this situation, commonly referred to as a battle of the forms, to determine if there is a

conflict that needs to be resolved.

### 2. Uniform Commercial Code[3]

"The UCC addresses the sad fact that many sales contracts are not fully bargained, not

carefully drafted, and not understandingly signed by both parties.  In these cases, [the Court]

appl[ies] UCC section 2-207[4] to ascertain the terms of an agreement."  *Standard Bent Glass*

*Corp. v. Glassrobots Oy*, 333 F.3d 440, 444 (3d Cir. 2003) (ellipsis, internal quotation marks,

and citations omitted).  In circumstances such as the case at bar, under the UCC,

> [t]he parties'[] performance demonstrates the existence of a contract.  The dispute
> is, therefore, not over the existence of a contract, but the nature of its terms.

---

[3] The only version of the UCC that the parties contend may be applicable is the version adopted
by Pennsylvania.  Pennsylvania has adopted UCC § 2-207 without modification.  13 Pa. C.S. §
2207.

[4] Section 2-207 provides that:
> (a) General rule.--A definite and seasonable expression of acceptance or a written
> confirmation which is sent within a reasonable time operates as an acceptance
> even though it states terms additional to or different from those offered or agreed
> upon, unless acceptance is expressly made conditional on assent to the additional
> or different terms.
> (b) Effect on contract.--The additional terms are to be construed as proposals for
> addition to the contract.  Between merchants such terms become part of the
> contract unless:
> (1) the offer expressly limits acceptance to the terms of the offer;
> (2) they materially alter it; or
> (3) notification of objection to them has already been given or is given within a
> reasonable time after notice of them is received.
> (c) Conduct establishing contract**.**--Conduct by both parties which recognizes the
> existence of a contract is sufficient to establish a contract for sale although the
> writings of the parties do not otherwise establish a contract. In such case the terms
> of the particular contract consist of those terms on which the writings of the
> parties agree, together with any supplementary terms incorporated under any
> other provisions of this title.

13 Pa. C.S. § 2207.

> When the parties'[] conduct establishes a contract, but the parties have failed to
> adopt expressly a particular writing as the terms of their agreement, and the
> writings exchanged by the parties do not agree, UCC § 2-207 determines the
> terms of the contract.

*Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 98 (3d Cir. 1991).

In this case, the standard conditions that CSN seeks to have included as part of the
contract are merely referenced in the documents that were exchanged. Under the UCC, a
provision will not be incorporated by reference if it would result in surprise or hardship to the
party against whom enforcement is sought." *Standard Bent Glass*, 333 F.3d at 448.
Furthermore, "[u]nder UCC section 2-207(2)(b), absent objection, additional terms become part
of the contract unless they materially alter it. A material alteration is one that would result in
surprise or hardship if incorporated without express awareness by the other party." *Id*. at 448
n.12 (internal quotation marks and citation omitted). Thus, under the UCC, whether the standard
conditions are incorporated into the contract between the parties depends upon whether
incorporation would result in surprise or hardship to RTI.

### 3. Convention for the International Sale of Goods

#### a. Additional Terms

Additional terms are governed by Article 19 of the CISG, which provides that:

> (1) A reply to an offer which purports to be an acceptance but contains additions,
> limitations or other modifications is a rejection of the offer and constitutes a
> counter-offer.
> (2) However, a reply to an offer which purports to be an acceptance but contains
> additional or different terms which do not materially alter the terms of the offer
> constitutes an acceptance, unless the offeror, without undue delay, objects orally
> to the discrepancy or dispatches a notice to that effect. If he does not so object, the
> terms of the contract are the terms of the offer with the modifications contained in
> the acceptance.
> (3) Additional or different terms relating, among other things, to the price,
> payment, quality and quantity of the goods, place and time of delivery, extent of
> one party's liability to the other or the settlement of disputes are considered to
> alter the terms of the offer materially.

### i. American Court Decisions

Few American courts, either state or federal, have interpreted Article 19. In *Claudia v. Olivieri Footwear Ltd.*, 1998 WL 164824 (S.D.N.Y. Apr. 7, 1998), the United States District Court for the Southern District of New York held that Article 19 embodies the mirror image rule. *Id*. at *7 n.6 (citing Larry A. Dimatteo, *An International Contract Law Formula: The Informality of International Business Transactions Plus the Internationalization of Contract Law Equals Unexpected Contractual Liability*, 23 Syracuse J. Int'l L. & Com. 67, 108 (1997); *Legal Analysis of the United Nations Convention on Contracts for the International Sale of Goods*, (1980), commentary on Article 19). In *Travelers Prop. Cas. Co. of Am. v. Saint-Gobain Technical Fabrics Canada Ltd.*, 474 F. Supp. 2d 1075 (D. Minn. 2007), the United States District Court for the District of Minnesota noted that "Article 19 embodies a mirror image rule." *Id*. at 1082. Likewise, the United States District Court for the Southern District of Ohio has stated that "the CISG applies the common law concept of mirror image." *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting Gmbh*, 2009 WL 818618, *4 (S.D. Ohio Mar. 26, 2009); *see also CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 752-53 (D. Md. 2011) (applying Article 19 in a fashion consistent with the mirror image rule).

### ii. Other Authorities

"When [American Courts] interpret treaties, [they] consider the interpretations of the courts of other nations." *Negusie v. Holder*, 555 U.S. 511, 537 (2009) (Stevens, J. concurring in part and dissenting in part) (citing *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 226-28, (1996)). German Courts have interpreted Article 19 as embodying a mirror image rule. *See* Bundesgerichtshof [BGH] [Federal Supreme Court] Jan. 9, 2002 (*Powdered milk case*), 2002

BGHReport 265, English translation available at

http://www.cisg.law.pace.edu/cisg/wais/db/cases2/020109g1.html (last accessed Sept. 10, 2013);

Oberlandesgericht [OLG] [Appellate Court Frankfurt am Main] June 26, 2006 (*Printed goods*

*case*), English translation available at http://cisgw3.law.pace.edu/cases/060626g1.html (last

accessed Sept. 10, 2013) (noting that "the silence of [Buyer][5] to [Seller]'s order confirmations is

not to be considered as an affirmation of [Seller]'s standard terms referred to."); Amtsgericht

Kehl [AG Kehl] [Petty District Court] Oct. 6, 1995 (*Knitware case*), English translation available

at http://cisgw3.law.pace.edu/cases/951006g1.html (last accessed Sept. 10, 2013) ("Assuming

that [seller] had sent its General Conditions to the [buyer], this would have constituted a counter-

offer in the sense of CISG Article 19(1).").

      Finally, it is appropriate to consider commentaries when interpreting treaties.  *Cf. United*

*States v. Alvarez-Machain*, 504 U.S. 655, 659 (1992) (discussing Justice Miller's examination of

commentary regarding the interpretation of a treaty).  Commentators have noted that Article 19

is an embodiment of the mirror image rule.  Anelize Slomp Aguiar, *The Law Applicable to*

*International Trade Transactions with Brazilian Parties: A Comparative Study of the Brazilian*

*Law, the CISG, and the American Law About Contract Formation*, 17 Law & Business Review

of the Americas 487, 527 (2011) ("the CISG in fact adopts the old common law 'Mirror Image

Rule'"); Ernest E. Smith & Owen L. Anderson, *Oil and Gas Marketing in Latin America*, Rocky

Mountain Mineral Law Special Institute (1994) ("the CISG essentially adopts the 'mirror image'

rule").

      Thus, with respect to the battle of the forms, the determinative factor under the CISG is

when the contract was formed.  The terms of the contract are those embodied in the last offer (or

_____

[5] German Court decisions do not disclose the parties to an action.  Instead, they reference them
by the terms buyer and seller.

counteroffer) made prior to a contract being formed. Once the contents of the original contract are determined, both parties must affirmatively assent to any amendment to the terms of the contract for such amendment to become part of the contract. *See Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 531 (9th Cir. 2003). Furthermore, standard conditions are only incorporated into an offer if the other party had proper notice.

"[N]o provision of the [CISG] creates such diametrical opposition to the [UCC] rule as does Article 19 in its clear adoption of the 'mirror image' rule . . . ." Ronald A. Brand, *Fundamentals of International Business Transactions: Volume I*, 75 (2013). Under the UCC, standard conditions in an acceptance that materially alter the terms of the agreement are disregarded. Under the CISG, an acceptance with different standard conditions is not actually an acceptance, but rather is a rejection and counteroffer.[6]

### b. Incorporation of Standard Conditions

### i. American Court Decisions

The United States District Court for the District of Maryland addressed the incorporation of standard conditions in *CSS Antenna*. The Court considered the fact that there was "no evidence on the record to show that [buyer] had actual knowledge of [seller's] General Conditions." *CSS Antenna*, 764 F. Supp. 2d at 754. The Court also considered that the parties

---

[6] To be more precise:

> Article 19 of the CISG varies slightly-but materially-from the common law mirror image rule, in that Article 19(2) contemplates that an acceptance of an offer that contains additional or different terms can nevertheless constitute an acceptance, if the additional or different terms do not materially alter the terms of the offer, and provided that the offeror does not object to the additional or different terms.

Arnold S. Rosenberg, et al, *International Commercial Transactions, Franchising, and Distribution*, 44 Int'l Law. 229, 241 n.107 (2010) (citing CISG Article 19(2)). However, standard conditions relating to the terms of payment are always material. CISG Article 19(3). Thus, the CISG's deviation from the mirror image rule is not applicable in this case. Accordingly, the Court will refer to Article 19 as embracing the mirror image rule without further reference to the deviation, which is not applicable in this case.

had never previously discussed the standard conditions in negotiations as weighing heavily against inclusions of the general conditions in the contract. *Id.*

Former Chief Judge Lancaster also addressed the incorporation of standard conditions under the CISG in *Tyco Valves & Controls Distribution GmbH v. Tippins, Inc.*, 2006 WL 2924814 (W.D. Pa. Oct. 10, 2006). He found factors to be considered when determining if standard conditions have been properly incorporated include whether the other party actually received the standard conditions and whether there is evidence that the other party read the standard conditions (such as initials next to the standard conditions). *Id.* at *5.

### ii. Other Authorities

Under the CISG, "[i]t is . . . required that the recipient of a contract offer that is supposed to be based on general terms and conditions have the possibility to become aware of them in a reasonable manner." Bundesgerichtshof [BGH] [Federal Supreme Court] Oct. 31, 2001 (*Machinery case*), 2001 BGHZ No. 149, English translation available at http://www.cisg.law.pace.edu/cisg/wais/db/cases2/011031g1.html (last accessed Sept. 10, 2013). As the German Supreme Court stated:

> [I]t is easily possible to attach to his offer the general terms and conditions, which generally favor him. It would, therefore, contradict the principle of good faith in international trade  as well as the general obligations of cooperation and information of the parties to impose on the other party an obligation to inquire concerning the clauses that have not been transmitted and to burden him with the risks and disadvantages of the unknown general terms and conditions of the other party.

*Id.* (internal citations omitted). In other words, "[i]t is accepted by legal practice that the other party must have the possibility to easily take note of the General Terms and Conditions." Oberlandesgericht [OLG] [Appellate Court Düsseldorf] Apr. 21, 2004 (*Mobile car phones case*),

English translation available at

http://www.cisg.law.pace.edu/cisg/wais/db/cases2/040421g3.html (last accessed Sept. 10, 2013).

Thus, UCC Section 2-207 also differs in a significant manner from CISG Articles 8 and

14 with respect to the incorporation of standard conditions.  Under the UCC, standard conditions

are incorporated unless they would cause surprise or hardship to the other party.  Under the

CISG standard conditions are only incorporated if one party attempts to incorporate the standard

conditions and the other party had reasonable notice of this attempted incorporation.

Accordingly, a conflict exists between the UCC and CISG, and the Court must determine which

law applies to the instant case.

### 4. Applicability of CISG

As mandated by Article VI of the United States Constitution, Pennsylvania's choice-of-

law principles recognize that international treaties to which the United States is a contracting

state, when applicable, are controlling.  *See Sinha v. Sinha*, 834 A.2d 600, 603 (Pa. Super. 2003).

The CISG "applies to contracts of sale of goods between parties whose places of business are in

different States . . . when the States are Contracting States."  *Forestal Guarani S.A. v. Daros*

*Int'l, Inc.*, 613 F.3d 395, 397 (3d Cir. 2010) (ellipsis in original) (quoting CISG Article 1(1)(a)).

"The United States ratified the CISG on December 11, 1986."  *Id.*  Germany is also a contracting

state to the CISG.  *See It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, 2013 WL

3973975, *17 (M.D. Pa. July 31, 2013).  The parties' places of business were in different states,

as is required by Article 1(2) of the CISG.  E.g. doc. no. 3-1, 12 (listing RTI's place of business

as Titusville, PA and CSN's place of business as Neunkirchen, Germany).

"Because both the United States [and Germany] are signatories to the CISG and the alleged contract at issue involves the sale of goods . . . the CISG governs."[7] *Forestal Guarani*, 613 F.3d at 397. However, just because the CISG governs does not necessarily mean that it applies in this case. Under Article 6 of the CISG, the parties may choose to exclude application of the CISG. In order for the contract to exclude the CISG it must include language which affirmatively states that the CISG does not apply. *BP Oil Int'l, Ltd., v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337 (5th Cir. 2003); *It's International*, 2013 WL 3973975 at *2 (citing *American Mint LLC v. GOSoftware, Inc.*, 2005 WL 2021248, *2 (M.D. Pa. Aug. 16, 2005)); *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 2011 WL 4494602, *3 (S.D.N.Y. Sept. 28, 2011); *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426, 430 (S.D.N.Y. 2011); *Belcher-Robinson, L.L.C. v. Linamar Corp.*, 699 F. Supp. 2d 1329, 1335 n.4 (M.D. Ala. 2010); *Zhejiang Shaoxing Yongli Printing & Dyeing Co. v. Microflock Textile Group Corp.*, 2008 WL 2098062, *2 (S.D. Fla. May 19, 2008); *Ajax Tool Works, Inc. v. Can-Eng Mfg. Ltd.*, 2003 WL 223187, *2 (N.D. Ill. Jan. 30, 2003); *Asante Techs., Inc. v. PMC–Sierra, Inc.*, 164 F. Supp. 2d 1142, 1150 (N.D. Cal. 2001).

In this case, CSN attempted to exclude the CISG in its standard conditions, which stated, "Supplies and benefits shall exclusively be governed by German law. The application of laws on international sales of moveable objects and on international purchase contracts on moveable objects is excluded." Doc. No. 3-1, 10. Even if the standard conditions are incorporated into the parties' contract, this attempted exclusion is ineffective. It does not explicitly reference the CISG. Furthermore, CSN's standard conditions attempt to exclude international law on the sale of "moveable objects." The CISG does not use the term "moveable objects." The only use of

_____

[7] There are several exceptions to the applicability of the CISG, as outlined in Article 2 of the CISG. *See Forestal Guarani*, 613 F.3d at 398 n.4. None of those exceptions apply in this case.

the word "objects" is as a synonym for the word "protests" not as a synonym for the word "goods."

Furthermore, the parties' positions in this litigation demonstrate that they believe exclusion was ineffective. Neither party argues that German law is applicable. Instead, they argue for either the CISG or the UCC. The papers that were exchanged between the two parties do not mention the UCC, or Pennsylvania law. If the exclusion included in CSN's standard conditions had been effective, German law would be the applicable law as the standard conditions reference German law in the same section as the attempted exclusion. RTI's statement that "CSN can't create a scenario where the CISG applies" is unconvincing. Doc. No. 38, 5. Further, RTI's argument that the UCC applies is without merit. The attempted exclusion is ineffective, and the CISG is the applicable law with respect to the instant contract dispute.

**B. Contract Formation**

Having determined that the CISG is the applicable law, the Court turns to the formation of a contract between RTI and CSN. CSN argues that RTI's purchase orders were offers and that CSN's order confirmations were rejections and counteroffers under the CISG. Alternatively, CSN argues that if it's order confirmations are considered acceptances, that the purchase orders (the offers) included CSN's standard conditions via reference to CSN's quotations. RTI on the other hand, argues that its purchase orders were offers that did not include by reference CSN's standard conditions and that CSN's order confirmations were in fact acceptances of the offers.

**1. RTI's Purchase Orders**

CSN's standard conditions are part of the contract under any theory being advanced by the parties if RTI's purchase orders incorporated by reference CSN's standard conditions. CSN's quotations included the following language, "According to our standard conditions of sale

to be found under www.csnmetals.de, we have pleasure in quoting without engagement as follows." Doc. No. 3-1, 2, 20. RTI's purchase orders were "per CSN quote" followed by the respective quotation numbers. Id. 12-15, 23-30.

CSN relies upon *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832 (3d Cir. 2003), in support of its argument that a purchase order that references a quotation incorporates the standard conditions of that quotation. CSN's reliance is misplaced. As discussed *supra*, the CISG governs this contract dispute.[8] In *Citisteel*, "[t]he parties agree[d] that Delaware law applie[d.]" *Id.* at 836 n.5. Under Delaware law, "reliance on . . . subjective intent is misplaced." *Id.* at 836 n.6. However, "the CISG expresses a preference that the offeror's intent be considered subjectively." *Hanwha*, 760 F. Supp. 2d at 432 Thus, *Citisteel* is not dispositive.

---

[8] In particular, Articles 8 and 14 of the CISG are applicable to the incorporation of standard terms. Article 8 provides that:

> (1) For the purposes of this Convention statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was.
>
> (2) If the preceding paragraph is not applicable, statements made by and other conduct of a party are to be interpreted according to the understanding that a reasonable person of the same kind as the other party would have had in the same circumstances.
>
> (3) In determining the intent of a party or the understanding a reasonable person would have had, due consideration is to be given to all relevant circumstances of the case including the negotiations, any practices which the parties have established between themselves, usages and any subsequent conduct of the parties.

Article 14 provides that:

> (1) A proposal for concluding a contract addressed to one or more specific persons constitutes an offer if it is sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance. A proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provision for determining the quantity and the price.
>
> (2) A proposal other than one addressed to one or more specific persons is to be considered merely as an invitation to make offers, unless the contrary is clearly indicated by the person making the proposal.

The parties do not cite, and the Court is not aware of, any decisions from courts in the United States addressing whether, under the CISG, an offer that references a document, which references standard conditions, incorporates those standard conditions in the offer. However, the Court finds instructive a decision from the Austrian Supreme Court. Oberster Gerichtshof [OGH] [Supreme Court] (*Tantalum powder case*), Dec. 17, 2003, English translation available at http:// cisgw3.law.pace.edu/cases/031217a3.html (last accessed Sept. 10, 2013) (citing CISG Articles 8 & 14). The Court held that "standard terms, in order to be applicable to a contract, must be included in the proposal of the party relying on them as intended to govern the contract in a way that the other party under the given circumstances knew or could not have been reasonably unaware of this intent."

In this case, RTI did not intend the standard conditions to apply to the contract. This fact is plain from the face of the purchase orders. The purchase orders included terms that were different from those included in CSN's standard conditions. For example, the purchase orders state that the orders are FOB destination while CSN's standard conditions state that the orders are FOB origin. Doc. No. 3-1, 6, 12. Furthermore, the quotations state that payment is due within 90 days (with important exceptions discussed *infra*), while the purchase orders state that payment would be due within 60 days. Doc. No. 3-1, 3, 12. Thus, RTI did not have the requisite intent to incorporate the standard terms that were referenced in CSN's quotations. *See Tantalum powder case* ("It requires an unambiguous declaration of the provider's intent."). Accordingly, the Court finds that RTI's purchase orders did not incorporate CSN's quotations.

## 2. CSN's Order Confirmations

### a. Standard Conditions

Having determined that RTI's purchase orders did not incorporate CSN's standard conditions referenced in its quotations, the Court must determine whether CSN's order confirmations constituted acceptances under the CISG or constituted rejections and counteroffers. The Court has detailed the manner in which the CISG treats the battle of the forms, *supra*.

The first page of CSN's order confirmations stated, "We thank you for your purchase order. This order confirmation is subject to our standard conditions of sale as known (www.csnmetals.de)." Doc. No. 3-1, 17, 32. As discussed *supra*, CSN's standard conditions were not incorporated into the RTI purchase orders. Therefore, if the standard conditions were properly incorporated into the order confirmations, the order confirmations would constitute counteroffers and not acceptances.

The Court finds persuasive *CSS Antenna*. In that case, an order confirmation included the following language: "According to our general conditions . . . [which] can be viewed at . . . our homepage . . . ." *CSS Antenna*, 764 F. Supp. 2d at 754. The Court held that language to be "ambiguous at best." *Id.*

In the case at bar, all of the factors that weigh against a finding that CSN's standard conditions were properly incorporated into the contract are present while none of the factors that weigh in favor of incorporation are present. The language included on the order confirmations was ambiguous at best, as the language merely directs the other party to a website which needs to be navigated in order for the standard conditions to be located. *See CSS Antenna*, 764 F. Supp. 2d at 754. There is no evidence that RTI had actual knowledge of the attempted inclusion of

CSN's standard conditions.  *See id.*  There is no evidence that the parties had discussed

incorporation of the standard conditions during contract negotiations.  *See id.*  There is no

evidence that RTI actually received CSN's standard conditions.  *Tyco*, 2006 WL 2924814 at *5.

Further, no employee of RTI initialed next to the statement attempting to incorporate the

standard conditions.  *Id.*

Typically, when considering Motions for Judgment on the Pleadings, the Court would

find further discovery on this issue appropriate.  However, both parties agree that there are no

further documents which would aid in the Court's determination of whether the standard

conditions apply.  See doc. no. 38, 6-8 (stating on the record that no discovery was necessary

regarding contract formation).  Thus, the Court finds that, when considering all of the evidence,

CSN's reference to its standard conditions did not suffice to incorporate those terms into the

order confirmations.  Therefore, CSN's standard conditions are not part of the contract as they

were not a part of either the purchase orders or order confirmations.

### b. Payment Target Language

As former Chief Judge McLaughlin stated, "there is one sub issue [relating to the

incorporation of CSN's standard conditions.]"[9]  Doc. No. 38, 4.  The order confirmations stated

that, "If we have offered a payment target, a sufficient coverage by our credit insurance company

is assumed.  In case this cannot obtained we have to ask for equivalent guarantees or payment in

advance."  Doc. No. 3-1, 18, 21.

The Court finds that this language was properly incorporated into both order

confirmations.  It was in regular print on the front of both order confirmations.  Id.  The language

did not reference any other document but rather was an independent additional term under

_____

[9] This case was assigned to Chief Judge McLaughlin prior to his resignation.

Article 19 of the CISG. Furthermore, the additional term was material under CISG Article 19(3), as it related to payment terms for the goods.

RTI's sole argument against this additional term under the CISG is that the additional term did not impose any duty on RTI but merely gave CSN the ability to ask for equivalent guarantees or advance payment. This argument is without merit. The word "ask" can mean "to expect or demand." *The American Heritage Dictionary of the English Language*, Fourth Edition (2000). When considered in the context that it was used, this is the natural meaning of the word "ask" in the order confirmations. The same sentence that the word "ask" appears in also uses the term "guarantees," evidencing the mandatory nature of the term ask. Furthermore, it is illogical to include in a contract a provision by which one party would request another party provide something as important as a guarantee regarding payment and then be fully satisfied if the other party refused to provide such a guarantee or advance payment. Any reasonable businessperson reading such a statement would have recognized that this term was a requirement if CSN did not obtain sufficient coverage from its insurance carrier.

The additional term that was properly incorporated into CSN's order confirmations was material under Article 19. Thus, the order confirmations were not in fact acceptances but rather constituted counteroffers.

### 3. RTI's Acceptance

The final step in determining if a contract was formed between RTI and CSN is consideration of the emails that were exchanged between the parties in August 2011. CSN argues that these emails were acceptances by RTI and therefore a valid contract was formed between the parties.

On August 9, 2011, RTI emailed CSN purchase order 6676. Doc. No. 29-7, 4. On

August 10, 2011, CSN replied, stating:

> [T]hanks again for the new purchase order. Please find attached our order
> confirmation as per e-copy for your best service. In case you would realize
> anything wrong or feel something important is missing on it, please let us know as
> it's most important for us to make sure about best customer service and support.
> ***VERY IMPORTANT: *** As you know we need "FULLY APPROVED
> DRAWINGS", original format. Please provide to us ASAP. As per our ISO-
> manual and strict management advise [sic] our mould-line-mgmt. can only
> schedule the order having these dwgs. (dwgs. actually in our hands are stated
> "confidential, quote only, uncontrolled drawing".

Id., 3-4. CSN then followed-up on August 15, 2011, asking for an approximate date that it

would receive the drawing from RTI. Id., 3. RTI responded that same day stating that "The

approved drawings went out UPS today, and you should receive them Wednesday, 8/17/11." Id.

CSN then acknowledged receipt of those drawings on August 17, 2011. Id., 2.

On August 23, 2011, RTI emailed CSN purchase order 6761. Doc. No. 29-11, 3. On

August 25, 2011, CSN replied, stating:

> [T]hanks for being a little sort [sic], but today's almost same crazy as yesterday.
> Please find our order confirmation attached. To play safe, let's have the usual
> crosscheck: In case you would realize anything wrong or feel something
> important is missing on it, please let us know as it's most important for us to
> make sure about best customer service and support. If there's any question about
> it from your side, please feel welcome to contract any time you need. Please send
> the fully approved, original format drawings over to us ASAP, so that we proceed
> on our end.

Id., 2-3. Later on August 25, 2011, RTI replied stating that "After reviewing your order

confirmation, please proceed with the manufacture of these plates." Id., 2. On August 26, 2011,

CSN sent an email that stated "ok . . . thanks for the quick reply. Still make sure to the the [sic]

order drawings to us. (fully approved, original format.)" Id.

Article 18(1) of the CISG provides that "A statement made by or other conduct of the

offeree indicating assent to an offer is an acceptance." RTI's acceptance of CSN's counteroffer

with respect to purchase order 6761 is evident from the email exchange. RTI stated that it had reviewed CSN's order confirmation and that CSN could "proceed with the manufacture of these plates." Doc. No. 29-11, 2. This was an affirmative statement indicating assent to the counteroffer, the order confirmation, without any reservation or attempted alteration. Thus, with respect to purchase order 6761, a contract was formed by RTI's email to CSN that stated manufacture could go forward. The terms of the contract were those set forth in CSN's order confirmation, including the term relating to advance payment. However, CSN's standard conditions were not incorporated into the contract that was entered into between the parties for the reasons set forth *supra*.

Although not as explicit as the conduct relating to purchase order 6761, RTI also accepted CSN's counteroffer with respect to purchase order 6676. CSN's emails of August 10, 2011, and August 15, 2011, made clear that they needed RTI's drawings in order to proceed with the order. See generally doc. no. 29-7. RTI then took affirmative action and followed the directions that were set forth in CSN's emails by sending via UPS the drawings for CSN's use. RTI then made an affirmative statement to CSN regarding the mailing of the drawings to CSN. Doc. No. 29-7, 3. Thus, RTI accepted CSN's counteroffer, at the very latest, on August 17, 2011, when CSN received the drawings. RTI made no statement in any email to CSN that it was not accepting the additional term that CSN included in its counteroffer, the order confirmation. Thus, a valid contract under the CISG was also formed with respect to purchase order 6676. The terms of the contract were those set forth in CSN's order confirmation, including the term relating to advance payment. However, CSN's standard conditions were not incorporated into the contract that was entered into between the parties for the reasons set forth *supra*.

### C. Breach of Contract

Having determined the parties obligations under the contract, the Court now turns to whether either party breached its obligations under the contract. CSN argues that RTI repudiated the contract and therefore was in material breach. Article 71 of the CISG provides that: "A party may suspend the performance of his obligations if, after the conclusion of the contract, it becomes apparent that the other party will not perform a substantial part of his obligations as a result of . . . his conduct in preparing to perform or in performing the contract." In this case, there is no dispute that RTI refused to perform on the contract. RTI sent a letter to CSN on October 24, 2011, stating that it would procure the requested copper from an alternate supplier. Doc. No. 1-1, 34. On October 25, 2011, RTI sent an email to CSN stating that "P.O.'s 6676 and 6761 are cancelled immediately due to CSN's inability to conform to RTI's terms listed on the P.O.'s." Id., 37. CSN responded stating that "please be informed the cancellation of the order is NOT ACCEPTED by CSN." Id. RTI then sent a follow-up letter to CSN on October 28, 2011, stating that it would not follow through with its obligations relating to advance payment or other forms of guarantee. Id., 40. On November 4, 2011, RTI sent yet another letter confirming it was canceling the purchase orders. Id., 44.

It is hard to imagine a clearer repudiation. RTI sent repeated notices to CSN over an 11 day period setting forth its reasons for not performing the contract. In short, RTI believed that the terms of the contract were different than they actually were. Thus, RTI breached its contractual obligations to CSN.

## V. Conclusion

This contract dispute demonstrates the confusion that can arise in a battle of the forms, particularly when the applicable law is disputed. For the reasons set forth above, the CISG governs this contract dispute. RTI's purchase orders did not incorporate CSN's standard conditions via reference to CSN's quotations. CSN's order confirmations did not incorporate its standard conditions. However, CSN did include within its counteroffer a term relating to payment if CSN's insurer refused to cover the transaction. Thereafter, CSN affirmatively invoked that term. After its invocation by CSN, RTI breached its contractual obligations by repudiating the contract. Therefore, RTI's Motion for Judgment on the Pleadings (doc. no. 40) will be DENIED and CSN's Cross-Motion for Judgment on the Pleadings (doc. no. 44) will be GRANTED.

No party moved for judgment on the pleadings with respect to CSN's other two counter/third-party claims. Those claims remain outstanding, as does the issue of damages with respect to CSN's breach of contract claim. An appropriate Order follows.

/s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record